**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:14-cv-00165-MR-DLH**

| | |
|---|---|
| **DEMARCUS BLAKLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **O R D E R** |
| ) | |
| **CORRECTIONAL OFFICER BATES,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 46].

## I.    PROCEDURAL BACKGROUND

The Plaintiff Demarcus Blakley, an inmate in the custody of the North Carolina Department of Public Safety ("NCDPS"), alleges that he was sexually assaulted and abused in violation of his Fourth and Eighth Amendment rights while housed at the Craggy Correctional Institution in Asheville, North Carolina.  [Doc. 26].  The Plaintiff asserts claims under 42 U.S.C. § 1983 for compensatory and punitive damages against Defendants Correctional Officer Matthew Bates ("Bates"), Correctional Officer Michael

Boyer[1] ("Boyer"), former Administrator Clifford Johnson ("Johnson"), Supervisor Michael Grasty ("Grasty"), and Supervisor Rocky Holbert ("Holbert"). The Plaintiff further seeks prospective injunctive and declaratory relief against former Administrator Johnson and Current Administrator Richard Terry ("Terry"). [Id.].

The Defendants now move for summary judgment on all of the Plaintiff's claims. [Doc. 46]. The Plaintiff, who is represented by counsel, opposes the Defendants' Motion. [Doc. 67].

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1] Defendants Bates and Boyer are identified in the Plaintiff's Amended Complaint only by their titles and surnames.

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record or by showing that the adverse party cannot produce admissible evidence to support that fact. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the court that a triable issue exists. Id. Finally, in considering a party's summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the non-moving party, and must draw all reasonable inferences in favor of the non-movant as well. Adams v. Trustees of Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

## III.   FACTUAL BACKGROUND

Viewing the respective forecasts of evidence in the light most favorable the Plaintiff, the following is a recitation of the relevant facts.

From February 2011 to April 24, 2012, the Plaintiff was incarcerated at Craggy Correctional Institution ("Craggy") in Asheville, North Carolina. [Blakley Decl., Doc. 67-2 at ¶ 5]. Craggy has three housing buildings, each

set up essentially the same way, with four open dormitories and central area with a desk for the officers which is open to view the restroom, shower, and dormitory areas. [Id. at ¶¶ 6-7; Photographs of Craggy Correctional Institution, Doc. 67-3, C1-C5]. The Plaintiff was housed in Building 1. At night, in the dorms at Craggy, officers often slept or left their posts. At times, the Plaintiff would see as many as five or six officers in the middle of the night talking and laughing loudly enough to wake him. Other times, there were no officers in the building at all. The Sergeant or Lieutenant made rounds around 8:00 every night, signed the log book, and then would not return for the rest of the night. [Blakley Decl., Doc. 67-2 at ¶ 8].

In March 2012, Defendant Bates, a correctional officer, began to sexually harass and abuse the Plaintiff. The Plaintiff took his shower last while no other inmates were present. Defendant Bates frequently made inappropriate sexual comments to him, grabbed his genitals and buttocks, watched the Plaintiff while showering, and exposed his penis to the Plaintiff. The Plaintiff stopped showering while Defendant Bates worked in the dorm because every time he worked the building Defendant Bates would walk into the shower area, expose his penis, and talk to the Plaintiff in a sexually explicit manner. [Id. at ¶ 9]. The Plaintiff felt unsafe and feared that Defendant Bates planned to sexually assault him.

The Plaintiff filed a grievance on April 17, 2012, asking for help from the Craggy administration. The grievance details a conversation that the Plaintiff had with Defendant Bates on April 16, 2012, during which Bates said, "Everybody know[s] that you are gay," and "If I had my way I kill all you gay son of bitch [sic]." [Apr. 17, 2012 Grievance, Doc. 67-4 at 1]. The Plaintiff also stated in his grievance as follows:

> I am sick and tired of being [discriminated] against because I am [a] gay black male. What I [have] chosen to do with my life is my business. I have put up with this long enough and I am tired. I should not have to be know where [sic] that I have been threat[ened].… Best thing for all to do is to get me off of this camp because I am really sick and tired of putting up with [this] officer mess and I am going to push this as far as I can because this is not right because [you] keep saying [you are] going to do something then don't do nothing.

[Id. at 1-2]. With respect to the remedy requested, the Plaintiff stated that "the only thing that can remedy this is to ship me off this camp becaus[e] I just don't feel safe [no] more." [Id. at 2].

The Plaintiff's grievance was promptly investigated. On April 24, 2012, a staff investigator[2] issued a Grievance Response detailing Officer Bates' version of the events of April 16, 2012. Specifically, the Grievance Response

---

[2] The staff investigator is identified as a "unit superintendent" on the Grievance Response but the name of that investigator is not legible.

recounted that Officer Bates had stated that on that day, he had observed the Plaintiff in a dormitory to which he was not assigned and therefore cited the Plaintiff for being in an unauthorized area. Bates denied using any derogatory or profane language or making any sexual comments to the Plaintiff during this encounter. [Id. at 3]. On May 9, 2012, Administrator Johnson reviewed the Plaintiff's grievance and the staff investigator's response and concluded that no further action was necessary. [Id.]. The Plaintiff appealed to the Inmate Grievance Resolution Board, which adopted the facts as found by the staff investigator and dismissed the grievance. [Id. at 4].

The Plaintiff presents a forecast of evidence that while his grievance was still pending review, on or about April 20, 2012, Defendants Bates and Boyer woke the Plaintiff in his bed around 1:00 a.m. and told him to dress and submit to handcuffs. The Plaintiff did as he was told. He also asked the officers what he had done. Defendant Bates told him that "all n***grs run their damn mouth too much, it's time we teach some respect." [Blakley Decl., Doc. 67-2 at ¶ 12]. The Plaintiff testified that Defendants Bates and Boyer walked him out of the dorm, down a hallway, and led him to a storage room out of sight of the other inmates. [Id. at ¶ 13]. Once inside the storage room, the Defendants closed the door, and Defendant Bates threw the Plaintiff into

the wall face first.  The Plaintiff's head hit the wall by the closed door, and he briefly lost consciousness.  Defendant Bates then grabbed the Plaintiff by his throat, choked him, and said, "So you're going to tell on me, so you're going to get my job taken away? We'll show you what we do with your kind around here."  Defendant Bates ordered the Plaintiff to undress and he refused. Defendant Bates punched the Plaintiff in the face with a closed fist hard enough to knock him off his feet.  The Plaintiff feared for his life, and complied with Defendant Bates' orders.  The Plaintiff stood, handcuffed behind his back, naked.  He was operating in survival mode and did not call out for help. He begged the officers to stop.  [Blakley Decl., Doc. 67-2 at ¶¶ 14, 15].  The Plaintiff asserts that Defendant Bates put on rubber gloves, forced the Plaintiff to bend over a desk, and repeatedly raped him anally with his fingers. Defendant Boyer held the Plaintiff down and urged Defendant Bates on. Defendant Bates retrieved a condom from his wallet, put the condom on his penis, and penetrated the Plaintiff's anus.  Defendant Bates then took the condom off and forced the Plaintiff to perform oral sex on him until he ejaculated. Defendant Bates gave the Plaintiff a travel size mouthwash to use to rinse out his mouth and promised him that if he ever told anybody about the assault, the Plaintiff would never make it home.  The Plaintiff

remained handcuffed behind his back for the entire assault.  [Blakley Decl., Doc. 67-2 at ¶¶ 16-18, 20].

Defendant Boyer went to the clothes house and gave the Plaintiff a new white t-shirt and boxer shorts.  Defendants Bates and Boyer put the boxers and pants on the Plaintiff, and walked him back to the gate area where the officers sit.  They removed his handcuffs and the Plaintiff walked back into his dorm.[3]  [Id. at ¶ 19].

The Plaintiff did not report the incident immediately because Defendants Bates and Boyer were still working their shift.  He did, however, report the assault in detail the next morning to Officer Janakowski.  Officer Janakowski told the Plaintiff that Sergeant Roberts would talk with him but Sergeant Roberts never came.[4]  Three days after the incident, the Plaintiff called his mother from the Chaplain's office and told her about the sexual assault. The Chaplain used a phone card to make the call for him.  The Plaintiff was not interviewed by anyone at Craggy about the sexual assault. He was not given a medical examination or rape kit.  [Id. at ¶¶ 21, 22].

---

[3] The Plaintiff offers no explanation for how he removed his shirt or put on the new t-shirt while handcuffed.

[4] Neither Officer Janakowski nor Sergeant Roberts were named as defendants in this action.

A few days after the assault, Plaintiff was sent to Eastern Correctional Institution to serve disciplinary time on unrelated charges. He returned to Craggy on May 10, 2012. At Craggy, the Plaintiff was moved to Building 2, but he still saw Defendants Bates and Boyer. They verbally harassed him. The Plaintiff feared that Defendant Bates would assault him again. [Id. at ¶ 23].

Plaintiff finally transferred away from Craggy on May 31, 2012, to Avery-Mitchell Correctional Institution ("Avery-Mitchell"), to have a mental health evaluation due to the anxiety attacks and insomnia he was experiencing. On June 21, 2012, he filed a grievance at Avery-Mitchell regarding the sexual assault at Craggy and was finally interviewed by prison staff about the sexual assault he suffered. [Id. at ¶¶25, 26; June 21, 2012 Grievance, Doc. 67-5]. The incident was referred for investigation by the Internal Affairs and PREA[5] investigator at Craggy, Lieutenant Van Franklin. [Franklin Aff., Doc. 57 at ¶¶ 6-7].

The Plaintiff was interviewed by Franklin and underwent a medical examination at Avery-Mitchell on June 25, 2012. [Id. at ¶¶ 8-12, 22]. The Plaintiff's medical examination revealed no injuries consistent with a sexual

---

[5] PREA refers to the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601, et seq.

assault.  [Id. at ¶ 22].  While the Plaintiff claimed that he suffered a bump on his forehead as a result of the assault, Franklin later determined that the bump had existed prior to the incident.  [Id. at ¶ 15].  Additionally, the Plaintiff could not provide Franklin with the exact dates and times of when the assault took place.  [Id. at ¶ 9].  The Plaintiff claimed that he had reported the incident to a fellow inmate, Eric Jones, and to Officer Janakowski; however, both Jones and Janakowski later denied to Franklin that the Plaintiff had ever made such a report.  [Id. at ¶¶ 10, 12, 19, 23].

Franklin reviewed the Craggy shift logs and concluded that Bates worked some dates in Building 1 in March and April 2012, but that Boyer only worked on one occasion in Building 1 (and not with Bates).  [Shift Logs, Doc. 47-2; Franklin Aff., Doc. 57 at ¶ 14].  On April 20 2012, Bates and Boyer were assigned to different posts within Building 3.  [April 20, 2012 Shift Log, Doc. 47-2 at 41; Bates Aff., Doc. 51 at ¶ 8; Boyer Aff., Doc. 52 at ¶ 7].  Because of the dormitory layout of Craggy, the shifts are divided into three four-hour segments and the officers on each shift rotate between posts throughout the night.  [Johnson Aff., Doc. 54 at ¶ 11; Layout, Doc. 51-1 at 83-84].  Only one officer is assigned to a post at a time and this leave the officers infrequently in contact with each other or the same group of inmates. [Johnson Aff., Doc. 54 at ¶ 11].

Franklin also interviewed eighteen other inmates housed with the Plaintiff at the time of the alleged assault. Of these inmates, two denied knowing the Plaintiff or anything about the incident. The other sixteen refused to give any statement at all to Franklin. [Inmate Statements, Doc. 49-1 at 21-39; Franklin Aff. Doc. 57 at ¶ 20].

Defendants Grasty and Holbert, who were both shift supervisors at the time of the alleged incident, deny that the Plaintiff reported the allegations to anyone at Craggy, and the Shift Logs and Notebook where shift sergeants and lieutenants record notes of the shift happenings for the dates around April 20, 2012 do not indicate that any such reporting had occurred. [Grasty Aff., Doc. 48 at ¶¶ 10-11, 14; Holbert Aff., Doc. 53 at ¶¶ 10-11, 13-14; Shift Notebook, Doc. 53-1]. Further, Franklin could not find any calls to the Plaintiff's mother's telephone number around the time of the incident in the facility telephone records. [Franklin Aff., Doc. 57 at ¶ 17]. Because of the lapse in time between the alleged incident and the Plaintiff's reporting thereof, and because the surveillance system deletes or records over footage after a certain amount of time, no surveillance video footage of Building 1 could be recovered. [Id. at ¶ 21].

Bates and Boyer deny the Plaintiff's allegations. [Franklin Aff., Doc. 57 at ¶ 18, Bates Aff., Doc. 51 at ¶¶ 9-11, 13-15; Boyer Aff., Doc. 52 at ¶¶ 11-

13, 15]. Neither Bates nor Boyer had ever been disciplined for inappropriate conduct with inmates prior to this incident, nor had their supervisors ever observed them acting unprofessionally with inmates. [Terry Aff., Doc. 47 at ¶¶ 14, 16; Grasty Aff., Doc. 48 at ¶¶ 7-8; Holbert Aff., Doc. 53 at ¶¶ 7-8; Johnson Aff., Doc. 54 at ¶¶ 16, 18; Franklin Aff., Doc. 57 at ¶¶ 31-32].

At all times relevant to this action, inmates at Craggy had a method to report PREA allegations. Inmates received PREA training and received information about PREA in their inmate handbooks. Additionally, there were multiple signs posted on the grounds with PREA information. [Terry Aff., Doc. 62 at ¶ 19; Grasty Aff., Doc. 48 at ¶ 19; Holbert Aff., Doc. 53 at ¶ 19; Johnson Aff., Doc. 54 at ¶ 26; Franklin Aff., Doc. 57 at ¶ 36].

Franklin notified local law enforcement and the local District Attorney's Office about the April 20, 2012 incident. Ultimately, the matter was referred to the State Bureau of Investigation ("SBI"), which conducted its own review and investigation of the allegations. [Franklin Aff., Doc. 57 at ¶¶ 24-25, 29; SBI Investigation, Doc. 63-1]. The SBI ultimately concluded that there was no evidence to support the Plaintiff's claims and that there was not probable

cause for criminal charges against Bates and Boyer.  [Franklin Aff., Doc. 57 at ¶ 30; Terry Aff., Doc. 47 at ¶ 11; SBI Investigation, Doc. 63-1].[6]

The Plaintiff is currently housed at Bertie Correctional Institution in Windsor, North Carolina, with a projected release date of June 4, 2017. [Blakley Decl., Doc. 67-2 at ¶ 4].

## IV.   DISCUSSION

### A.   Plaintiff's Eighth Amendment Claims against Defendants Bates and Boyer

The Plaintiff asserts claims under § 1983 against Defendants Bates and Boyer, arguing that their acts of sexual assault and abuse constitute cruel and unusual punishment in violation of the Eighth Amendment. Defendants Bates and Boyer assert that they are entitled to qualified immunity.  They argue that the Plaintiff has failed to present a sufficient forecast of evidence to show that any sexual assault occurred, and as such, the Plaintiff cannot establish any constitutional violation.  Based thereon they assert that qualified immunity bars this claim.

---

[6] The Defendants also present a forecast of evidence that following his investigation, Franklin recommended that the Plaintiff be charged with a disciplinary infraction for making false allegations against Bates and Boyer, and that the Plaintiff ultimately was found guilty of that offense by a Disciplinary Hearing Officer.  [Franklin Aff., Doc. 57 at ¶¶ 26-28; Disciplinary Report, Doc. 57-1].   The Defendants do not offer any argument, however, as to how such evidence might be admissible.

"The doctrine of qualified immunity 'balances two important interests-- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Danser v. Stansberry, 772 F.3d 340, 345 (4th Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Qualified immunity is an affirmative defense to liability under § 1983 and shields government officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilkins v. Upton, 639 F. App'x 941, 943 (4th Cir. 2016) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In evaluating a defendant's assertion of qualified immunity, the Court engages in a two-step approach. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Pearson, 555 U.S. at 231. First, the Court must determine whether the facts, viewed in the light most favorable to the plaintiff, show that the official's actions violated a constitutional right. Second, the Court must determine whether that right was "clearly established" at the time the violation occurred. Saucier, 533 U.S. at 201. The Court may consider these steps out of order in light of the particular circumstances of the individual case. Pearson, 555 U.S. at 236.

In the present case, it is not disputed that the right of an inmate to be free from sexual assault by a guard is a clearly established right under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (citation and internal quotation marks omitted); see also Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) ("In the simplest and most absolute of terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault, and no reasonable prison guard could possibly have believed otherwise.").

While not disputing that the right to be free from sexual assault is clearly established, the Defendants nevertheless argue that they are entitled to qualified immunity because the Plaintiff has failed to present a sufficient forecast of evidence to establish that a constitutional violation actually occurred. Specifically, the Defendants contend that there is "a glaring lack of support" for the Plaintiff's claims, and that their own forecast of evidence "utterly discredits Plaintiff's version of events." [Doc. 59 at 20-21]. In so arguing, the Defendant compare the present case to the facts of Scott v. Harris, 550 U.S. 372 (2007).

In Scott, a motorist who led police on a high speed chase was rendered a quadriplegic after the officer pursuing him terminated the chase by bumping the rear of the motorist's vehicle, causing it to leave the road and crash. The motorist sued the officer pursuant to § 1983, claiming that the officer violated his Fourth Amendment rights by using deadly force in seizing him. The officer moved for summary judgment, claiming he was entitled to qualified immunity. The Eleventh Circuit Court of Appeals rejected the officer's claim of qualified immunity believing it was compelled to credit the motorist's version of the events for purposes of summary judgment even in the face of a video recording of the pursuit which clearly contradicted the motorist's version of events. The Supreme Court rejected that approach, stating as follows:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a **genuine** dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be **no genuine issue of material fact**. When opposing parties tell two

different stories, **one of which is blatantly contradicted by the record**, so that no reasonable jury could believe it, a court should **not** adopt that version of the facts for purposes of ruling on a motion for summary judgment.

That was the case here with regard to the factual issue whether [the motorist] was driving in such fashion as to endanger human life. [The motorist's] version of events is **so utterly discredited** by the record that **no reasonable jury could have believed him.** The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Id. at 380-381 (emphasis supplied; citations and quotation marks omitted).

While acknowledging the lack of video evidence in the present case, Defendants Bates and Boyer argue that their forecast of evidence "so utterly discredits Plaintiff's version of events" that the Court should not rely on the Plaintiff's forecast of evidence in ruling on the Defendants' motion for summary judgment. [Doc. 59 at 20-21].

The Defendants' reliance on <u>Scott</u> is misplaced. In <u>Scott</u>, the motorist's version of events was directly contradicted by a video depicting the events as they actually occurred. The plaintiff therein failed to come forward with any forecast showing that the video was not substantive conclusive proof of what occurred. Here, however, there is no video evidence. There is only the testimony of various witnesses, some prison records, and the reasonable

inferences which can be drawn therefrom. While the testimony of the defense witnesses undermine and contradict the Plaintiff's testimony, the Court cannot say that the record when viewed as a whole "utterly discredit[s]" the Plaintiff's version of events. The Defendants argue that their forecast shows that the fact as asserted by the Plaintiff are a "logistical impossibility". For example, they point to prison logs showing that Bates and Boyer were assigned to a different building on the night in question. While this raises an inference that these Defendants were where they were assigned, it does not "utterly discredit" the Plaintiff's testimony that they were in fact elsewhere. The Defendants also cite to evidence regarding the location of guards in the Plaintiff's pod who would have seen Bates and Boyer if they had been there. This, however, does not "utterly discredit" the Plaintiff's testimony that sometimes the guards would leave this station unmanned. Because the Plaintiff's testimony has not been "utterly discredited," the Court must accept the Plaintiff's testimony as true and draw all reasonable inferences in his favor at this stage of the proceedings. While the Plaintiff clearly has a mountain of contrary evidence to overcome, viewing the Plaintiff's forecast of evidence in the legally required light, the Court concludes that the

Plaintiff's otherwise uncorroborated[7] testimony constitutes a sufficient forecast of evidence from which a reasonable jury could conclude that he was, in fact, sexually assaulted by Defendant Bates, with the assistance of Defendant Boyer, and that such assault inflicted serious injury to the Plaintiff. Given that genuine disputes of material fact exist, Defendants Bates and Boyer are not entitled to qualified immunity with respect to the Plaintiff's § 1983 claim for violation of the Eighth Amendment. Accordingly, Defendants Bates and Boyer's motion for summary judgment is denied with respect to these claims.

### B. Plaintiff's Eighth Amendment Claims against Defendants Johnson, Grasty, and Holbert

The Plaintiff sues Defendants Grasty and Holbert, in their individual capacities as supervisors of Officer Bates and Officer Boyer, and former Administrator Johnson, in his individual capacity as the supervisor of Grasty, Holbert, Bates, and Boyer, for their alleged failure to protect the Plaintiff from

---

[7] The Plaintiff argues that his testimony is, in fact, corroborated by the expert report of Dr. Jeannie Adair. Aside from the fact that this report is not sworn to, and is not even signed, it fails to provide the Plaintiff any corroboration. Dr. Adair supposedly opines "I am unable to provide a professional opinion regarding any facts that a sexual assault occurred." [Adair Report, Doc. 67-7 at 2]. At most, the report is ostensibly an opinion that the Plaintiff is truthful, which is not an admissible opinion under Fed. R. Evid. 702. See United States v. Allen, 716 F.3d 98, 106 (4th Cir. 2013) (citing Nimely v. City of New York, 414 F.3d 381, 398 (2d Cir. 2005) (holding "that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702").

sexual abuse and retaliation in violation of his Eighth Amendment rights. These Defendants will be referred to herein as the "Supervising Defendants."

The Supervising Defendants move for summary judgment as to these claims, arguing that the Plaintiff has failed to present a forecast of evidence that they committed any violation of the Plaintiff's constitutional rights. Accordingly, they contend, they are entitled to qualified immunity.

To prevail on a claim against an administrative or supervisory prison official for an Eighth Amendment violation under § 1983, an inmate must show (1) "a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" and (2) that the prison official demonstrated a "deliberate indifference to inmate health or safety." Danser, 772 F.3d at 346-47 (citations and internal quotation marks omitted). An inmate may establish "deliberate indifference by showing that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "A prison official's subjective actual knowledge can be proven through circumstantial evidence showing, for example, that the substantial risk of [sexual assault] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about

it." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (citation and internal quotation marks omitted). "Beyond such actual knowledge, the prison official 'must *also* have recognized that *his actions were insufficient* to mitigate the risk of harm to the inmate.'" Wilkins, 639 F. App'x at 944 (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).

Here, the Plaintiff has presented no forecast of evidence from which a reasonable jury could conclude that the Supervising Defendants had any personal involvement in any sexual abuse or assault of the Plaintiff. Further, the Plaintiff has failed to present any forecast of evidence to show any long-standing or pervasive sexual abuse of prisoners by guards at Craggy. The only evidence presented by the Plaintiff is his April 17, 2012, grievance against Bates. The Plaintiff presents no evidence that Defendants Grasty and Holbert even saw the grievance or were aware of its existence. The Plaintiff offers only the pure conjecture that, as the immediate supervisors of Bates and Boyer, they "must have" had actual knowledge thereof. Moreover, in that grievance, the Plaintiff does not allude to any sexual abuse or assault by Bates and thus the grievance cannot reasonably be construed as providing notice to prison officials of a substantial risk of a sexual assault. The Plaintiff's grievance did not reference the multiple times that Bates allegedly observed the Plaintiff in the shower and made inappropriate sexual

comments, grabbed his genitals and buttocks, or exposed his own genitals to the Plaintiff. Instead, the grievance refers to one conversation, which occurred while the Plaintiff was being written up for a disciplinary infraction, wherein Bates stated that he knew the Plaintiff was gay and that he would kill all gay people if he "had [his] way." [Apr. 17, 2012 Grievance, Doc. 67-4 at 1]. The Plaintiff argues that this portion of the grievance put Defendant Johnson on actual notice that the Plaintiff needed to be protected from generally violent acts by Bates, and to be specifically protected from sexual violence. However, once the Plaintiff filed his grievance, prison officials promptly investigated his allegations and determined that the incident did not occur as claimed by the Plaintiff. The Plaintiff has failed to offer any evidence that would tend to show how the prison officials acted with deliberate indifference in conducting this investigation. With the facts as found by the investigating officer, the Plaintiff's grievance gave prison officials "no basis" to believe that the Plaintiff was at risk of being harmed by Defendants Bates and Boyer. See Wilkins, 639 F. App'x at 945 (dismissing Eighth Amendment claims against supervisory prison officials where no evidence presented that officials were aware of any substantial risk posed by correctional officer's unsupervised access to inmate).

The Plaintiff also contends that the Supervising Defendants were deliberately indifferent in their failure to supervise the officers in the dorms late at night. The Plaintiff, however, has failed to present a forecast of evidence that prison officials had any actual or constructive notice that officers routinely left the dorms unsupervised as alleged by the Plaintiff. Without such forecast of evidence, the Plaintiff has failed to demonstrate that the Supervising Defendants had any basis to know of a substantial risk of sexual assault of prisoners as a result of this alleged practice.

The Plaintiff further argues that the Supervising Defendants were deliberately indifferent in failing to ensure that the Plaintiff had access to effective reporting and investigative procedures for sexual assaults. The forecast of evidence presented by the Defendants, however, establishes that inmates at Craggy had a method to report PREA allegations; that inmates received PREA training; and that they received information about PREA in their inmate handbooks. In addition, there were multiple signs posted on the grounds with PREA information. The Plaintiff has offered no forecast of evidence to show that the prison's reporting and investigative procedures were in any way defective.

To the extent that the Plaintiff's claims against the Supervising Defendants are based on a theory of supervisory liability, such claims also

must fail.  For a prison official to be held liable under § 1983 under a theory of supervisory liability, an inmate must demonstrate that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).  As noted above, the Plaintiff has failed to present a forecast of evidence that would tend to show that the Supervising Defendants had any actual or constructive knowledge of a substantial risk of harm posed by the correctional officers.  Accordingly, the Supervising Defendants could not have been deliberately indifferent to the officers' conduct or tacitly authorized the same.  For all of these reasons, the Plaintiff's § 1983 claims based on violations of the Eighth Amendment by Defendants Johnson, Grasty, and Holbert must be dismissed.

### C.    Plaintiff's Fourth Amendment Claims

As an additional basis for his § 1983 claims, the Plaintiff relies on the Fourth Amendment.  To the extent that such claims are premised on Fourth

Amendment violations, the Plaintiff has failed to present a forecast of evidence from which a reasonable jury could find in the Plaintiff's favor. The Fourth Circuit has held the Eighth Amendment "stands as the primary constitutional limitation associated with an inmate's bodily integrity," and that the right to bodily privacy afforded to inmates by the Fourth Amendment is narrowly limited to the involuntary exposure of the inmate's genitals in the presence of the opposite sex. See Wilkins, 639 F. App'x at 944-45; Lee v. Downs, 641 F.2d 1117, 1119-21 (4th Cir. 1981). Here, there is no indication that the Plaintiff's genitals were involuntarily exposed to any member of the opposite sex as a result of the any of the Defendants' alleged actions. Accordingly, all of the Plaintiff's claims under § 1983 based upon a violation of the Fourth Amendment are hereby dismissed.

### D. Claims for Injunctive and Declaratory Relief against Defendants Terry and Johnson

The Plaintiff also seek prospective injunctive and declaratory relief against former Administrator Johnson and current Administrator Terry in their official capacities. As the Court has concluded that the Supervising Defendants in their individual capacities did not demonstrate any deliberate indifference to the Plaintiff's constitutional rights, the Plaintiff's claims for

prospective injunctive and declaratory relief against these Defendants in their official capacities must be dismissed as well.

Even if the Plaintiff could demonstrate deliberate indifference on the part of the administration, however, the Plaintiff's claims for injunctive and declaratory relief are subject to dismissal on the basis of mootness. The Fourth Circuit has held "that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives." Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007). Here, the Plaintiff has been transferred to another prison and is no longer housed at Craggy.

The Plaintiff contends that he could be transferred to another facility, including Craggy, "at any time," and thus this case falls within the narrow exception to the mootness doctrine which allows federal courts to consider disputes that, while moot, are "capable of repetition, yet evading review." [Doc. 67 at 21]. The Plaintiff's argument is without merit. "In the absence of a class action, jurisdiction on the basis that a dispute is "capable of repetition, yet evading review" is limited to the "exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior

to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Incumaa, 507 F.3d at 289 (internal quotation marks, citations, and alteration omitted).

The Plaintiff argues that there is a reasonable expectation that he will be returned to Craggy, relying simply on the fact that the Plaintiff is designated as a medium security prisoner and Craggy is a medium security facility. This, however, is nothing more than speculation that the Plaintiff could *possibly* be returned to Craggy. It does not demonstrate a reasonable *expectation*. Moreover, none of the Defendants remain in the positions they held at the time of the claimed events. Hence, even if the Plaintiff were returned to the Craggy facility he would not be returned to the same circumstances of which he complains.

For these reasons, the Court concludes that the Plaintiff's claims for prospective injunctive and declaratory relief should be denied as moot.

## V.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment by Defendants Bates, Boyer, Terry, Grasty, Holbert, and Johnson [Doc. 46] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Defendants' Motion [Doc. 46] is **GRANTED** with respect to the Plaintiff's claims for violations of the Fourth and Eighth Amendments

against Defendants Terry, Grasty, Holbert, and Johnson, as well as the Plaintiff's claims for prospective injunctive and declaratory relief against the Defendants Johnson and Terry, and all such claims are hereby **DISMISSED WITH PREJUDICE**.  The Defendants' Motion [Doc. 46] is further **GRANTED** with respect to the Plaintiff's claims against Defendants Bates and Boyer based on allegations of violations of the Fourth Amendment, and such claims are hereby **DISMISSED WITH PREJUDICE**.  The Defendants' Motion [Doc. 46] is **DENIED** with respect to the Plaintiff's claims against Defendants Bates and Boyer based on allegations of violations of the Eighth Amendment.

      **IT IS SO ORDERED.**

Signed: November 23, 2016

Martin Reidinger
United States District Judge